IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| TONYA JO PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-03269-CV-S-MDH-SSA |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff Tonya Jo Parker's appeal of Defendant Social Security Administration Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act. Plaintiff exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole and the decision is **AFFIRMED**.

## BACKGROUND

On July 7, 2017, Plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, with an alleged onset date of January 4, 2017 (Tr. 10, 162-170). Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a "final decision" of the Commissioner of the Social Security Administration (SSA). Plaintiff's claims were denied initially (Tr. 10, 83-84). On October 16, 2019, following a hearing, an ALJ found Plaintiff was not under a "disability" as defined in the Act (Tr. 10-21). On June 23, 2020,

1

the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Thus, Plaintiff exhausted her administrative remedies, and the ALJ's decision is ripe for review.

Plaintiff was born in 1963, and she alleged disability beginning January 4, 2017 (Tr. 162 169). In her disability report, Plaintiff alleged disability due to: bipolar disorder, panic disorder, depression with psychotic features, social anxiety, and post-traumatic stress disorder, PTSD, (Tr. 244). The ALJ concluded that Parker was able to perform a full range of work at all exertions levels but could only understand, remember and follow simple instructions and could perform simple tasks that are not performed in tandem or as an integral part of a team; could occasionally interact with coworkers and supervisors; and could not provide customer service to the general public. (Tr. at 15). In coming to this conclusion, the ALJ found that the opinion of the state agency consultant was persuasive, the opinion of Parker's primary care provider, Dr. Geiger, was unpersuasive, and the opinion of Parker's counselor, Ms. Middletonlotte, was "persuasive only at the time it was given." (Tr. at 16, 18-19).

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552

F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide sufficient evidence to support the mental RFC. Plaintiff further argues that the ALJ failed to properly consider her subjective reports. Contrary to Plaintiff's arguments, the ALJ properly evaluated her subjective complaints in concluding that, although her mental impairments resulted in some limitations for which the ALJ accounted in the RFC, they were not disabling (Tr. 13-19). While Plaintiff argues that ALJ relied only on a conclusory statement that Plaintiff's subjective complaints were not fully consistent with the entire record, the ALJ engaged in a thorough, seven-page discussion of the relevant evidence and explained her reasons for concluding that Plaintiff's impairments were not disabling under the

3

Act (Tr. 13-19). In doing so, the ALJ acknowledged Plaintiff's statements and testimony regarding her mental impairments, including her allegations of anxiety attacks and severe depression requiring her to stay in bed, daily flashbacks, hearing voices, feeling guilty, having panic attacks two to three times per month (with racing heart, feeling sick to her stomach, and uncontrollable crying for thirty minutes to one hour), isolative behavior, and memory difficulties (Tr. 14-19, 39, 41-42, 268, 356, 408, 657).

Despite Plaintiff's complaints to her providers, however, the ALJ concluded that her mental status examinations failed to support the level of limitation she alleged (Tr. 16-19). *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (ALJ may decline to credit a claimant's subjective complaints if claimant's testimony is inconsistent with the record as a whole). The ALJ recognized that some of Plaintiff's examinations showed depressed mood and demeanor, blunted and flat affect, anxious demeanor, poor insight, impaired judgment, disordered thought content and perception, "relatively poor" concentration and attention, and slightly sluggish motor activity (Tr. 14, 16-17, 360-62, 387, 390, 606, 644, 658, 671, 674, 684).

However, the ALJ appropriately considered that Plaintiff's examinations also revealed that she interacted appropriately and cooperatively with treatment providers, was polite and engaging, maintained good eye contact, and was alert, oriented, and in no distress with intact or fair memory, appropriate and bright affect, euthymic mood, normal speech and thought process, intact or fair attention and focus, appropriate or fair judgment and insight, average fund of knowledge, coordinated motor activity, and no thoughts of harming herself or others (Tr. 16-17, 360-62, 387, 390, 611-12, 644, 658, 661-64, 666, 668, 671-72, 674, 682, 684). *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective medical evidence properly considered in evaluating subjective

complaints); *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (ALJ properly concluded "that the objective medical evidence did not support [the claimant's] allegations").

Although the ALJ described treatment notes showing varied symptoms with different medication dosages and combinations (Tr. 16-19, 408-09, 643-44, 657-58, 662-65, 667-68, 672, 675), the ALJ appropriately cited to substantial evidence showing stable or improved symptoms with medication and treatment (Tr. 16-19). As the ALJ explained, Plaintiff presented for depression and "nervous breakdown" in June 2017; however, she had weaned herself off all of her medications two years prior and had not taken any mental health medications since 2015, despite alleging disability since January 4, 2017 (Tr. 363 (reporting recent hospitalization), 389). Plaintiff restarted medications in June 2017, and although the record shows she complained of difficulties tolerating the medications in August and November 2017, the ALJ appropriately considered evidence showing improved symptoms with updated dosage and combinations of medications (Tr. 16, 387, 408-09, 657-58). Indeed, in December 2017, Plaintiff reported that she was no longer crying or sad after starting the Emsam patch, and she denied depressive symptoms (Tr. 660). Plaintiff complained of some irritability and anxiety, but the provider explained that the patch medication took about a month to settle down in her system and become more balanced (Tr. 660). Plaintiff thought that Abilify and the Emsam patch were "a good combination for her" and said she liked the patch better than anything she had previously tried (Tr. 660). Further, mental status examination showed improved attention and focus (Tr. 661). Additionally, Jonnie Middletonlotte, M.S., L.P.C., wrote that Plaintiff appeared to be stable during a December 2017 therapy visit (Tr. 690). Plaintiff again reported improvement with the Emsam patch in January 2018, reporting that she felt better than she ever had while on the patch (Tr. 17, 622). The ALJ appropriately considered

Plaintiff's statements that the patch "helped her quite a bit" and provided improved mood and energy (Tr. 664).

Despite alleging some increased anxiety and having a few panic attacks in April 2018, Plaintiff was assessed as "doing well" overall, and she denied major depressive symptoms or suicidal thoughts (Tr. 666-67). In May 2018, Plaintiff reported increased anxiety over the past two weeks, but she had not received her Emsam patch shipment, which she said had helped her significantly (Tr. 668). In August 2018, Plaintiff told Amber Brewer, a psychiatric nurse practitioner, that she wanted to restart Abilify, as she felt it was helping more than she had thought (Tr. 670, 672). She complained of depression, anxiety, panic attacks once or twice per week, and suicidal thoughts approximately one week prior (Tr. 670). The ALJ recognized that Plaintiff reported sad mood, excessive sleep, low energy level, poor concentration, and chronic suicidal thoughts without active plans in September 2018, but Plaintiff endorsed manageable anxiety and irritability (Tr. 17-18, 637, 673).

The ALJ acknowledged that Plaintiff was hospitalized in November 2018 after reporting suicidal ideation with plans to overdose; she identified her "biggest stressors" as recently losing her mother-in-law and her family dog and having problems with her daughter (Tr. 18, 42 (describing increased symptoms with stressors of putting down two family pets and losing her mother-in-law in a three-month period), 601, 603, 607, 613-15, 628-631, 640). As the ALJ explained, however, with treatment and medication adjustments, Plaintiff's suicidality resolved (Tr. 18, 611, 676). The ALJ also pointed to a therapist's suggestion that Plaintiff's application for disability benefits was reinforcing an illness "not-able" identity that undermined her efforts for improved self-image and coping (Tr. 18, 629). Despite reporting some continued depression, excessive sleep, and isolative behavior in December 2018, the ALJ reasonably considered

6

Plaintiff's January 2019 report that she was "doing very well" with medications and had stable mood, good sleep, reasonable energy level, no suicidal thoughts, and no PTSD symptoms (Tr. 18, 643, 645 ("Overall she feels that her current medications are giving her enough stability."), 681). As the ALJ noted, Plaintiff said that she still had some highs and lows with lethargy and tiredness in April 2019, but Plaintiff reported that she had "maintained a degree of stability," and she endorsed relatively well-controlled depression and manic symptoms, manageable anxiety, controlled PTSD symptoms, and no suicidal thoughts (Tr. 18, 683). She was noted to have good and reasonable to response to medication, and she said that therapy helped (Tr. 681, 683, 687 (new medication helping), 689 (Plaintiff reported feeling a profound peace after successful therapy session)). Plaintiff also reported improved ability to drive starting in November 2018 after a medication change (Tr. 48). Although Plaintiff argues the opposite, the ALJ appropriately concluded that the record as a whole showing stability and improvement with medication and treatment weighed against Plaintiff's allegations of disabling mental impairments (Tr. 13-19). *See Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015) (claimant's medical records "indicate her mental conditions improved with the proper medications").

Additionally, despite Plaintiff's arguments to the contrary, the ALJ appropriately found that Plaintiff's self-reported daily activities of driving, running errands, shopping in stores, cooking for two hours at a time once per week, managing her money, and cleaning her home established a greater level of functioning than alleged (Tr. 13-14, 19, 48, 270-71). Her additional activities of helping with her husband and son's car lot business, playing card games, reading, writing, watching television and movies, caring for her pets, performing personal care activities without special reminders, and going to weekly doctor appointments weighed against her allegations of disabling limitations (Tr. 41-42, 48, 269-272, 619, 628-29 ("Her husband and son recently started

7

Case 6:20-cv-03269-MDH   Document 22   Filed 03/01/22   Page 7 of 12

a new car lot business that she helps with.'); *see also* Tr. 50 (testifying that she never worked for her husband's car lot)). Plaintiff also followed written instructions well (Tr. 273). Plaintiff alleged that she did not get along with others; however, she reported having good relationships with her children and good ability to get along with authority figures, and her ability to attend group therapy with up to nine other individuals and live with her husband, daughter, and newborn granddaughter established a greater level of social functioning than alleged (Tr. 39, 43, 268, 272-73, 615, 617, 622, 628, 630, 671). *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("Thomas's activities–caring for her young son, preparing his meals, doing housework, shopping for groceries, handling money, watching television, and driving a car when necessary, among other things– showed that she could work.").

Plaintiff also frequently complained of situational stressors that affected her symptoms (Tr. 16-17, 356-57 (difficulties with her husband, who she felt was being unfaithful), 364 (same), 389 (under more stress at home with finances and was yelled at while at work in June 2017)). Treatment notes listed occupational, financial, and social stressors (Tr. 644 (recent death of mother-in-law and issues with daughter), 661, 663, 665, 667, 669, 672, 675, 684). As the ALJ noted, in February 2018, Plaintiff attributed being a "little weepy from time to time" to life stressors (Tr. 664). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (claimant's depression was situational and not disabling because it was due to denial of food stamps and workers compensation and there was no evidence that it resulted in significant functional limitations).

Here, the ALJ expressly acknowledged Plaintiff's alleged mental symptoms and discussed her examinations, treatment, and daily activities, as discussed above (Tr. 13-19). Indeed, the ALJ found that Plaintiff's mental impairments were severe, and the ALJ explicitly accounted for her anxiety and mood symptoms, as well as her statements that she felt judged by others, in finding

moderate limitations in interacting with others and limiting her social contact (Tr. 14-15, 18, 43). The ALJ also accounted for moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace in limiting her to simple work (Tr. 14-15, 18).

Further, although Plaintiff argues the opposite, the ALJ appropriately evaluated the medical opinion evidence and prior administrative medical findings in evaluating Plaintiff's subjective complaints and determining her RFC (Tr. 16, 18-19). The ALJ appropriately evaluated the November 2017 prior administrative medical finding of James Morgan, Ph.D., in finding it was persuasive (Tr. 18, 56-66, 70-80). After reviewing Plaintiff's available records and discussing the evidence in detail, Dr. Morgan found that Plaintiff could perform simple tasks with limited social contact (Tr. 56-66, 70-80). The ALJ found that Dr. Morgan's conclusions accounted for Plaintiff's anxiety and mood problems and were consistent with the record as a whole (Tr. 18). For example, the ALJ found the doctor's conclusions were consistent with record evidence showing that, although Plaintiff was hospitalized (once after taking no medication for two years), her symptoms stabilized or improved with medication adjustments and treatment (Tr. 13-19, 39, 41-43, 48, 269-273, 356-57, 360-62, 364, 387, 389-390, 601, 603, 607, 611-15, 617, 619, 622, 628-631, 637, 640, 644-45, 658, 660-676, 681-84, 687, 689-690). The doctor also supported his conclusions with a thorough discussion of the available evidence (Tr. 56-66, 70-80). The ALJ appropriately evaluated Dr. Morgan's findings in finding they were persuasive (Tr. 18). *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Additionally, the ALJ appropriately considered the August 2018 opinion of Paul Geiger, D.O., in finding it was not persuasive (Tr. 19, 402-04). The ALJ properly concluded that the doctor's conclusion that Plaintiff would miss four or more days of work per month and would be

9

Case 6:20-cv-03269-MDH   Document 22   Filed 03/01/22   Page 9 of 12

off task 25 percent or more of the time was inconsistent with, and unsupported by, the record as a whole (Tr. 19, 404). Specifically, the ALJ found that Dr. Geiger's restrictive limitations as to time off-task and absenteeism conflicted with examinations showing she had at the very least fair (and at times good or normal) attention and concentration (Tr. 360, 644, 658, 661, 664, 666, 668, 672, 682, 684), and with evidence showing good response to medication changes as discussed above (Tr. 19, 48, 611, 622, 637, 645, 660, 664, 666-68, 670, 672-73, 676, 681, 683, 687, 689-690). The doctor's finding that Plaintiff was incapable of low-stress work conflicted with this same evidence (Tr. 404). The ALJ appropriately evaluated Dr. Geiger's opinion in deeming it not persuasive. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Further, the ALJ appropriately found that Ms. Middletonlotte's July 2017 assessment of marked to extreme limitations in all areas of mental functioning was persuasive only at the time in which it was given (Tr. 16, 372-73). As the ALJ explained, Ms. Middletonlotte's statement was consistent with contemporaneous evidence indicating that Plaintiff was recently hospitalized with complaints of a mental breakdown (Tr. 16, 363, 372-73, 389). The ALJ appropriately concluded, however, that the statement was inconsistent with subsequent evidence generally showing improved or stable symptoms with treatment and medication, as discussed above (Tr. 16-19, 48, 611, 622, 637, 645, 660, 664, 666-68, 670, 672-73, 676, 681, 683, 687, 689-690). The ALJ appropriately evaluated this opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

Plaintiff's contention that there was no substantial medical evidence to support the RFC fails. First, the ALJ here expressly relied on Dr. Morgan's prior administrative medical finding limiting Plaintiff to simple tasks with limited social contact in finding it persuasive and incorporating these limitations in the RFC (Tr. 15, 18, 56-66, 70-80). For the reasons above, the

ALJ appropriately found that the opinions of Dr. Geiger and Ms. Middletonlotte were not persuasive (Tr. 16, 19, 372-73, 402-04).

In addition to relying on Dr. Morgan's prior administrative medical finding, the ALJ also properly relied on Plaintiff's own statements and on medical evidence showing improved or stable symptoms with treatment, examination findings that failed to support her allegations of disability, her ability to perform of a range of daily activities, and symptoms related to situational stressors (Tr. 13-19, 39, 41-43, 48, 269-273, 356-57, 360-62, 364, 387, 389-390, 601, 603, 607, 611-15, 617, 619, 622, 628-631, 637, 640, 644-45, 658, 660-676, 681-84, 687, 689-690).

Second, unlike the lack of any medical evidence in *Lauer v. Apfel*, 245 F.3d 700, 704-05 (8th Cir. 2001), upon which Plaintiff relies, the ALJ here expressly relied on Dr. Morgan's prior administrative medical finding limiting Plaintiff to simple tasks with limited social contact in finding it persuasive and incorporating these limitations in the RFC (Tr. 15, 18). The ALJ also relied on other record evidence, as discussed above, which showed improved or stable symptoms with treatment, examination findings that conflicted with disabling limitations, performance of a 269-273, 356-57, 360-62, 364, 387, 389-390, 601, 603, 607, 611-15, 617, 619, 622, 628-631, 637, 640, 644-45, 658, 660-676, 681-84, 687, 689-690).

In summary, the ALJ properly evaluated Plaintiff's subjective complaints and gave specific reasons for her conclusion that Plaintiff's mental impairments, albeit severe, were not disabling (Tr. 13-19). In doing so, the ALJ appropriately weighed the medical opinion evidence and prior administrative findings, as explained above (Tr. 16, 18-19). The ALJ accounted for Plaintiff's limitations that were supported by the record in formulating her RFC (Tr. 13-19). Substantial evidence supports the ALJ's conclusion that, although her mental impairments resulted in some limitations that were accommodated in the RFC, they were not disabling under the Act. The fact

that Plaintiff disagrees with the ALJ's conclusion, or that she cites evidence that she contends undercuts the ALJ's findings, does not change that substantial evidence supports the ALJ's conclusion. *See Chesser*, 858 F.3d at 1164; *Wright*, 789 F.3d at 852; *Chismarich*, 888 F.3d at 980; *Biestek*, 139 S. Ct. at 1154. Substantial evidence supports the ALJ's decision, and the Court should uphold it. *See Biestek*, 139 S. Ct. at 1154.

## CONCLUSION

For the reasons set forth herein, the Court finds there is substantial evidence in the record as a whole to support the ALJ's determination. Accordingly, the Commissioner's decision denying benefits to Plaintiff is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: March 1, 2022                                             */s/ Douglas Harpool*
                                                                 **DOUGLAS HARPOOL**
                                                                 **United States District Judge**